NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-69

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 526978

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level two sex offender.  Doe argues that the evidence was "in equipoise" as to whether he and the eleven year old sexual assault victim were in an extrafamilial relationship, and so the hearing examiner erred in assigning risk-elevating weight under the regulation defining factor 7, 803 Code Mass. Regs. § 1.33(7) (2016).  Doe further contends that the hearing examiner did not give sufficient weight to mitigating evidence and thus Doe's classification as a level two sex offender was not based on substantial evidence.  We affirm.

Background.  In 2016, Doe was in a romantic relationship with the victim's mother.  On the night of June 6, 2016, the victim was sharing a bed with her cousin.  While the cousin slept, Doe entered the bedroom and got on top of the victim.  Doe touched the victim's breast and buttocks with his hand, rubbed her buttocks with his penis, and penetrated her vulva with his finger.  When Doe tried to pull off the victim's pants, she kicked him.  The victim struggled to get away, falling to the floor and bruising her right forearm and leg.

The next day, the victim told several friends, a teacher, and a school nurse about the sexual assaults, and then described them to a police officer in the presence of Department of Children and Families (DCF) social workers.  On June 8, 2016, the victim underwent a forensic interview.  Based on those statements, DCF reports related that the victim had referred to Doe as her "stepfather," and had said that Doe spent "every night" at the home where she lived with her mother and siblings.  As a result of his conduct on June 6, 2016, Doe pleaded guilty to one count of statutory rape, G. L. c. 265, § 23, and three counts of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B.

In 2019, SORB notified Doe of his duty to register as a level three sex offender in Massachusetts.  Doe challenged his classification.  At an evidentiary hearing in September 2021, a

hearing examiner considered documentary evidence including DCF reports.  In assessing the evidence, the hearing examiner applied high-risk factor 3 (adult offender with child victim), and risk-elevating factors 7 (relationship between offender and victim), 16 (public place), and 19 (level of physical contact). The hearing examiner considered risk-mitigating factors 28 (supervision by probation or parole), 30 (advanced age), 33 (home situation and support systems), and 34 (stability in the community).  The hearing examiner also considered scientific studies under factor 37 (other useful information) and the victim's impact statement under factor 38.

The hearing examiner found by clear and convincing evidence that Doe presented a moderate risk to reoffend as well as a moderate degree of dangerousness, and that a public safety interest was served by Internet publication of his registry information.  The hearing examiner further found that Doe "gained access to the 11-year-old extrafamilial [v]ictim by dating her mother," and "women he may date in the future, who may have children or grandchildren, should know of his sexual offense history and risk."  Accordingly, the hearing examiner classified Doe as a level two sex offender.

Doe appealed his level two classification by filing a complaint for judicial review pursuant to G. L. c. 6, § 178M. Doe and SORB filed cross motions for judgment on the pleadings.

3

A Superior Court judge denied Doe's motion and affirmed SORB's decision. Doe appeals from that judgment.

Discussion. 1. Standard of review. We review de novo a judge's consideration of an agency decision. See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe No. 523391).

> "A reviewing court will not disturb SORB's decision unless that decision was (a) in violation of constitutional provisions; (b) in excess of SORB's authority; (c) based upon an error of law; (d) made upon unlawful procedure; (e) unsupported by substantial evidence; (f) unwarranted by facts found by the court, where the court is constitutionally required to make independent findings of fact; or (g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 108-109 (2014) (Doe No. 68549). See G. L. c. 30A, § 14 (7).

2. Relationship between offender and victim. Doe argues that because the victim referred to him as her "stepfather" and reported that Doe spent "every night" in her household, their relationship was intrafamilial. As a result, Doe contends, the hearing examiner erred in finding that the relationship was extrafamilial and thus misapplied factor 7. We are not persuaded.

The regulation defining factor 7 explains that "[t]he number of potential victims substantially increases when offenders choose to sexually offend against extrafamilial

4

victims," and "[h]aving victims outside the family relationship is empirically related to an increased risk of reoffense." 803 Code Mass. Regs. § 1.33(7)(a)(2) (2016). Thus, if an offender sexually offends against an extrafamilial victim, factor 7 applies with risk-elevating weight; if the victim is intrafamilial, factor 7 is neutral. See Doe, Sex Offender Registry Bd. No. 524553 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 525, 533 (2020). Whether a victim is extrafamilial or intrafamilial is a "subsidiary fact" pertaining to an offender's risk of reoffense that SORB is required to prove by a preponderance of the evidence. Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 656 (2019) (Doe No. 496501).

As in effect at the time of Doe's classification, the regulation defined an "extrafamilial victim" to include "[a]ny persons who are family member substitutes (e.g. foster, step-relatives, or any other type of familial household 'live-in' relationship) who lived in the same household with the offender for less than two years prior to the offending behavior." 803 Code Mass. Regs. § 1.33(7)(a)(2) (2016).[1] Conversely, a family member substitute who lived in the same household as the

---

[1] That regulation was amended in 2025. See 803 Code Mass. Regs. § 1.33(7)(a)(3)(c) (2025).

5

offender for two or more years was defined by that regulation as an "intrafamilial victim."[2]  See 803 Code Mass. Regs. § 1.33(7)(a)(1).  Doe argues that because the hearing examiner acknowledged that the "evidence regarding [Doe's] residence with the Victim is contradictory and/or vague," that showed that there was insufficient evidence to support a conclusion by a preponderance of the evidence that the victim was extrafamilial.

On the issue of whether Doe lived in the same household as the victim, the hearing examiner considered the DCF reports documenting the victim's statements, including that she said that Doe slept at her home "every night."[3]  The hearing examiner also considered the statements of the victim's other family members.  The victim's mother reported to DCF that, as of June 2016, she had been romantically involved with Doe for two years. The mother specifically denied that Doe lived with her and her

_____

[2] Doe does not argue, and did not argue in the Superior Court or during the administrative proceedings, that in defining factor 7 the regulation inappropriately draws a "bright line" by using two years as the benchmark delineating an extrafamilial victim from an intrafamilial one.  See 803 Code Mass. Regs. § 1.33(7)(a).  We do not consider that issue.

[3] As for a DCF report relating the statements of a school nurse and school psychologist that the victim had referred to Doe as her stepfather, we note that the DCF report also stated that when the victim spoke to DCF workers she referred to Doe as her mother's boyfriend.  Because the definition of an extrafamilial victim does not turn on whether the offender was married to the victim's parent or how the victim referred to the offender, the point is immaterial.

6

children; she stated that Doe spent about two to three nights a week at the victim's home, but Doe lived in a different section of Boston. Similarly, the victim's brother stated that Doe often visited and stayed overnight, but did not live at the victim's home. In addition, a neighbor of Doe's submitted a letter of support stating that Doe "has been living next to [her] for the past 15 years" at an address in the same section of Boston where the mother reported that Doe lived.

Based on that evidence, the hearing examiner concluded that Doe had lived in the same household as the victim "for less than two years prior to the offending behavior," 803 Code Mass. Regs. § 1.33(7)(a)(2), and therefore the victim was extrafamilial to him. Merely because Doe and the mother had been romantically involved for two years did not establish that they began living together at the very start of their relationship. From the victim's statement that Doe was at their home "every night," the hearing examiner was not required to find that Doe had lived in that household for two years. See Doe No. 523391, 95 Mass. App. Ct. at 90-91. Moreover, the hearing examiner noted that the victim's father reported to DCF that, about three months before the victim's disclosure in June 2016, the victim told her father that Doe was touching her inappropriately. Based on that, the hearing examiner found that Doe began the "offending behavior,"

7

803 Code Mass. Regs. § 1.33(7), at least three months before the June 6, 2016, date of offense set forth in the indictments.

It was "for the hearing examiner to weigh the evidence presented." Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 298 (2021). When evidence conflicts, "[i]t is the province of [SORB], not this court, to weigh[] the credibility" of the evidence and "resolve any factual disputes." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011). The hearing examiner properly resolved the conflicting evidence before her, and found by a preponderance of the evidence that the victim was extrafamilial to Doe. See Doe No. 523391, 95 Mass. App. Ct. at 92 (subsidiary facts must be proved by preponderance of evidence). This finding was sufficiently "specific and detailed" as to demonstrate that "close attention has been given to the evidence" (quotation omitted). Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 570 (2020). We conclude that the hearing examiner properly applied factor 7 with risk-elevating weight.

3. Substantial evidence. Doe argues that the hearing examiner's classification of him as a level two sex offender was not based on substantial evidence, which is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Doe No. 496501, 482 Mass. at 658, quoting G. L.

8

c. 30A, § 1 (6). Specifically, Doe contends that the hearing examiner did not "holistically and interactively" evaluate risk-mitigating evidence.

In accordance with 830 Code Mass. Regs. § 1.33, the hearing examiner applied risk-mitigating factors 28 (supervision by probation or parole), 30 (advanced age), 33 (home situation and support systems), and 34 (stability in the community). The hearing examiner explained the weight she gave to each of those factors. The weight to be assigned was within her discretion and is entitled to deference. See Doe No. 68549, 470 Mass. at 109-110. The hearing examiner also discussed each of these mitigating factors, the evidence that supported them, and how they affected Doe's risk of reoffense. That demonstrated the holistic nature of the hearing examiner's analysis. We conclude that the classification of Doe as a level two sex offender was supported by substantial evidence.

Judgment affirmed.

By the Court (Hand, Grant & Wood, JJ.[4]),

Clerk

Entered: June 6, 2025.

---

[4] The panelists are listed in order of seniority.